Good morning, Your Honors. I am pleased to report Chris Stender on behalf of the Easterseers Payan petitioner in this matter. The petitioner has asked that this matter be remanded back to the immigration judge for further proceedings, given the major changes that have taken place in the law and the facts of this case since the immigration judge first heard this matter and made his decision in December 2nd, 2011. I think most notably for the petitioner, a case came out for the BIA matter of Olavasquez on June 8th, 2012, some five years after the petitioner filed his Adjustment of Status, and why that case is relevant to the petitioner is that the BIA said that evidence beyond the actual finding in the Adjustment of Status could be considered as to whether the petitioner sought to acquire his residence within one year of the visa petitioner becoming eligible. What the BIA analyzed in this case is called the Child Status Protection Act, and it's something that there were four different immigration judges. It's something that all the judges wrestled with. It's a very complex area of a bond for which there was some agreement at some point in front of Judge Hollis that the petitioner was eligible. Later, the case was transferred for different reasons amongst different judges in different settings, and eventually it was decided that by the judge Jeffrey's decision was not eligible. But given the fact that the matter of Olavasquez was decided five years afterwards, it would seem fitting and fair that this matter be remanded, so testimony could be taken. No testimony in any of the proceedings amongst any of the judges was ever taken from the petitioner. And even if it had been taken, certainly since this case wasn't even published until five years after his filing and a year after the immigration judge considered it, certainly this case would not have been litigated at that point. Another reason for the Court to consider remanding it is for proper application of the Noifelt Memo, which is something that was argued all the way up before the immigration judges. It's interesting because under the terms of the memo, it was argued below that it does not even require that an actual application be filed to be considered under that application. The immigration judge, the BIA, don't really ever seem to take that into consideration. That's language that was argued, and it seems that certainly the petitioner would be eligible under that section of the memo. Again, that memo wasn't published. Councilor, go ahead. I'm sorry. I know. I'm watching the comments. I'm just wondering if what you're suggesting is that we let the BIA decide in the first instance as to the applicability of the Noifelt and the Enrique O. Baskin's case to your colleagues. I'm not quite sure how these cases are applicable at this point. Is this what you're asking? Well, we're asking that to go back to the immigration judge, because I think additional facts and testimony need to be taken because the subject matter is very broad, and keeping it a subject matter, it steps through many different ways, and the BIA wouldn't be able to take any of that evidence. None of it was ever offered. And the cases in the memo kind of are things that have been after all these things. They're to be taken. And, again, this case has been around for quite some time. But it's something you did not, like I said, say that you didn't file a formal application. True. That's true. There was a sweet spot between exact dates, April 1, 2005, when the BIA's position became current, and April 1, 2006. I think everybody would agree that he was eligible during that time period, but the question is did he rely on some of these other cases for the lack of information from the agency and also from the immigration judge regarding his eligibility? Was he represented by counsel at the time? He was represented by an attorney at the time he filed. It was an administrative filing before the agency, before it ended up in court, after it was denied by the agency and was referred over to court. At that point, when it was picked up in court, there was an attorney. They did represent him and made a lot of his arguments under the LBCSPA, and it was a knowingly-filled memo. These things were litigated, but some of the other cases that came out subsequently wasn't litigated because it wasn't published by the BIA, and there's no guidance from the BIA on this matter. Do we have any BIA decisions in terms of the sum to acquire Miami-Hawaii-Shulman-Vazquez? Besides the matter of Obasca, I'm not aware of any, but if you look at the language of the matter of Obasca as an incitement or a brief, it's really broad. It seems to me that it could be lots of different gigs, and what the intent was, what his understanding of Obala was, all those factors, none of that. The records were void of any of that. Again, there was no case toward it taking, but even if it had been taken, it wouldn't probably have addressed those issues because we didn't have a matter of Obasca. The editorial wasn't aware that that could be evidence seeking to acquire within the one-year time period, so we have nothing in the record on that. We did argue, and I think the BIA missed the point, on the Obala-Perez case, we didn't say that it directly applied, but, again, we were just trying to make the argument that it's a question, did he rely on that case in filing, did he need some question of reliance, and, again, even immigration judges mentioned that there's a lot of confusion regarding the CSPA, and it's very difficult to apply that law. And you'll want to know, I believe the government stated that we did not raise the case of the matter of Zamora. Olena, I think that's better. I don't know if in terms of summaries, the BIA cites it as matter. Olena, we said it as matters. Zamora, Olena, the BIA cites it as, they think it's somewhat dysfunctional in this case. Do I just want to make a distinction? Once you've been in our briefing, I wanted to make it your matter of argument that the major distinction is more, Olena, is that the naturalization of the pyramids were in place prior to the visa becoming current. So he moved categories prior to the visa becoming current. In our case, the visa became current first, and the pyramid naturalized. That's very significant because he stated that that 2A preference category, 2A to 2B, you can check when he turns 21, I'm hearing for the 2A to the 2B, and the BIA in the case law agrees that the Child Statute Protection Act applies when you're in that second preference category. They're saying, well, it is formally, and it doesn't apply after you go to the first or immediate relative category. But, again, that distinction is just completely missed by the BIA. And the question is, did he seem to acquire while he was still within that second preference category? That's something that's a factual issue. It needs to be litigated. And Errol Gossett is right on point on that. So, again, I think that would be completely appropriate for that matter. In regard to the petitioner's conviction on the solicitation to commit sale and transportation of marijuana, there's case law by this court, the MLIC at court, and I don't know if DeRosso, that attempt and conspiracy. So didn't he waive that claim by not raising it to the BIA? Well. I mean, it's troubling because I think if he had waived it, I don't think the crime was actually one of the CIMG, but I think it seems waived. But there are two exceptions that this court has acknowledged are the law for failure to exhaust. And it was mentioned in the notice of appeal that we argue the BIA inherited a point of the law in the case. The CIMG issue was agreed before the immigration judge, but the two exceptions are manifested just as war. Again, there was no prejudice as to the interference of the opposing party. And I think it's a miscarriage. I don't think the government filed their BIA agreement. One week before our brief was filed, they made also no mention of the CIMG issue or the solicitation was securely on the CSPA. They didn't even wait to look at our brief. And the issues argued in our brief are the same issues covered by the government brief. So I think there's a lack of prejudice here. And we would ask the court to get to a new legitimate clause, very clearly, that he's validating this will under this court's precedent. And I think that you've already buggered into. But again, given the changes in law and the facts of this case, I think the agreement would be the appropriate manner so he could fully litigate whether or not he sought to acquire his status up in law from a resident and whether or not he relied on misinformation or lack of information. The record's devoid of that. And if there are no questions, I'd like to reserve my last minute for counsel. Thank you. Thank you. Thank you to the court. I'm Christine Aguirre on behalf of the United States Attorney General. While this case appears to be complicated, it is actually very simple. The board did not err when it concluded that Petitioner did not have a visa immediately available and so could not adjust status. At the time of both of his adjustment applications in 2007 and 2009, he was in the first reference category, which includes adult children of United States citizens. At the time of his adjustment applications, his visa was not current or the priority date for his visa was not current. The priority date is the date on which that MI-130 petition to classify you as a family member is filed here. That priority date is January 6, 1998. And it's still not available for the Petitioner. To avoid this different category issue, Petitioner asserts that he qualifies to adjust that or qualifies from and benefit under the Child Status Protection Act, which allows people to, it gives an age calculation that can be somewhat confusing, but it allows children of lawful permanent residents who then turn 21 while they're waiting for a visa to sometimes still be able to qualify as minor children, which has a much shorter backlog, even though they've already biologically turned 21. And that calculation takes place when the date the visa becomes available as a minor child of an LPR, and we call that 2A preference. The 2B preference is once the child turns 21 and has been the adult child of a lawful permanent resident. So when Petitioner turned 21, that was November 24th, or sorry, November 4th, 2004, a visa first became available for his priority date in the 2A category on April 1st, 2005. And at that time, the government concedes he was eligible to apply for Adjustment of Status under the CSPA. If he had filed an Adjustment of Status application at that point, he could have benefited from the Child Status Protection Act. Do you think this seeks to require SOTC to require language, requires a formal application, or is there some other means that Petitioners can refer folks to? Under a matter of a FASCAS, the port held that SOTC to acquire is a little bit broader than just the filing of an application. It can include the filing of an application that has been rejected and refiled, something akin to the one-year asylum deadline, forgiveness, and things such as potentially ineffective assistance of counsel, where the Petitioner had completed, or the applicant had completed the application and then the attorney filed it late. But here, or in other extraordinary circumstances beyond the alien's control, here Petitioners do not file until more than two years after the visa became available, and he has submitted no, he hasn't even alleged any sort of exceptional circumstance that would forgive and would explain a more, a greater than two-year gap between the visa becoming available and his applying. But his argument is that the SOTC to require language in the statute was amplified in a matter of a FASCAS, and had he known that extraordinary circumstances could provide an escape hatch, if you will, he would have put on evidence. So what do I think of that? It's our position that he hasn't even alleged a reasonable basis to believe that that could be a potential, that matter of a FASCAS would even apply here. He has not alleged any facts that he has proven would substantiate that. So how could he have alleged that when a matter of a FASCAS came about five years after his application, and it wasn't before the BIA, it was just sort of proven, so he knows very well. It was not, I believe it came out a few months after the BIA's decision, so he could have submitted a motion to reopen with new evidence. That wouldn't be part of these proceedings, but then if there was a denial, then it could have been consolidated with these proceedings. But even then, he hasn't alleged any facts, even to this court, that even aren't in the record sufficient to show that remand could even be fruitful. We don't know anything, and he is in a position to know what did happen. As he said, he wasn't represented by an attorney. This happened more than two years after the San Joaquir language. We have no information, and so remanding would potentially be entirely fruitless without any sort of factual basis for doing so, without any sort of even attorney assertions about what would be proven on remand. It's entirely speculative and could be a waste of time. And going to the Dishonor's argument that a matter of a FASCAS is very broad, it's not, it's very narrow, it makes the exceptions very narrow. It's extraordinary circumstances beyond the ombligate's control, and it includes, it doesn't, it's also clueless what those things are, but it does provide a very narrow, a much narrower interpretation of San Joaquir than what the Dishonor is alleging. Furthermore, he, the Dishonor argues that the Newfound M.O. represented a change in law that allows him to apply, or to continue to benefit from the 2A preference category, or that he would have at the time of his application in 2007, and that is incorrect because of the San Joaquir language he did not seek to acquire, so these two arguments somewhat go together. But his argument under the Newfound M.O. is that there was confusion about the effectiveness of the M.O. And the problem, though, is that the effective date, confusion regarding those who aged out prior to the effective date, Petitioner aged out after the effective date of the CSTA. So the Newfound M.O., the 2003 M.O., the 2002 M.O., and Avila, Avila Perez all discuss the effective date and how the CSTA applies to those who aged out before the effective date, reading it the way Petitioner is suggesting would say that no one benefits from the CSTA unless they had an adjustment application pending at the time of its enactment, which can't be true. All of the policies, or all of the policy M.O.s, we're trying to figure out, how does it apply to those who aged out before the CSTA went into effect? So those M.O.s are not applicable here. Can I ask you a question? What's the government's position on whether an underlying crime is solicitation, is a CIMT? Our position is that it is, but also that that argument is not exhausted, and so we do not brief it for that reason. So we would request the opportunity to submit a supplemental brief on that issue if the court does wish to address it, because for our purposes, we consider it to be entirely exhausted, as Petitioner did not raise it before the board. Did you get it exhausted? Yes. Thank you. It was not exhausted. Can I just go back to the persuasive evidence issue on an application, because it seems to me from my reading of this that that evidence seems to be something concrete, that there was an application filed or discarded, or that there's evidence of something, some concrete thing that happened in a relevant time period, that failed for technical reasons or procedural reasons or circumstances beyond the applicant's control. And there is nothing I'm aware of in the record here that shows that those steps were taken within the proper time period. Just earlier. And so the idea that he may have wanted to apply but didn't know he could or didn't know he should or didn't know how to would not give rise to an excuse. Yes, Your Honor. It's always, as you stated, it is always something much more concrete. It can be retaining an attorney. Actually, they do say retaining an attorney right in the matter of Homascus. Retaining an attorney in a file is one of the excusing factors actually listed in the matter of Homascus, isn't it? It is, but the court or the board made specific mention of if you hired an attorney, completed the application, submitted all of the evidence to that attorney, and everything was prepared and ready to be filed, but the attorney failed to file it, then that's something that would almost rise to the, or that would potentially rise to the level of an effective assistance of counsel, not just your counsel. That's right. An effective assistance of counsel. That would excuse the, that would provide a basis for relief under the matter of Homascus, right? Yes, potentially. But as Petitioner stated in his previous argument, Petitioner was not represented by an attorney when he applied for adjustment of status before USCIS. So we don't have, it appears that that would not apply. So when should he have to show that? I mean, he's saying he'd have an opportunity to show it because this wasn't a rule at the time he was doing this. Should he have made a proffer to us to show there would be a substantial reason to remand this back so he could actually make the showing? Or is it enough for his counsel to just say there's no record of what he would have done or didn't do, so we should remand it to let him develop that? The government suggests that a proffer would be the correct way to go here because merely saying, well, it could apply, he's in the position of knowing whether it would or wouldn't apply, and merely saying it could just gives more time to wait out if he's becoming available, potentially. We have been litigating this case since, I believe, 2007 or 2008, and remanding it from our proceedings when he knows whether or not this does apply to saying it. Right. Because there's a petition record here. So he'd have a proffer. Yes. Okay. Anything further? Thanks for your argument. Thank you. I don't have anything else to add unless there's any follow-up questions from the board. Thank you. Thank you. The case is ready to be submitted for decision.
judges: Thomas, Wardlaw, Bencivengo